<div style="margin-left:2em">JOHNSON<br>
v.<br>
JOHNSON.</div>

confined to her cabin, and continued incapable of doing the work for she was sold by the defendant.

The defendant was aware that she had a disease of some kind. When he was about selling her, he asked the physician who was in the habit of attending his slaves, whether he could guaranty her as sound. That physician asked her the usual questions to ascertain the symptoms attending a disease of the womb. She replied in the negative, and from the cursory examination he made of her, he told the defendant that he thought he could guaranty her as sound. A short time before she had a miscarriage on board of a vessel on her way to Louisiana. Whether her illness was the result of that accident, as one of the physicians seems to believe, or whether it was produced by a disease independent of it, the slave was unsound at the time of the sale, to the knowledge of the defendant, and her disease is proved to have rendered the use of her so inconvenient and imperfect, that it must be supposed that the plaintiff would not have purchased her if he had been apprized of its existence.

We incline to the opinion of the court below, that the testimony of the two physicians who have attended the slave since she is in the possession of the plaintiff, is entitled to more weight than that of physicians who saw her but once, in relation to the disease alleged. Whether that disease be curable or not, may be a matter of conjecture; but it is an undeniable fact that thus far it has not been cured, and that the plaintiff has not what he bargained for.

*Judgment affirmed.*

---

## IN THE MATTER OF THE MERCHANTS BANK OF NEW ORLEANS.

Where a statute directs that the salaries of the commissioners for the liquidation of a bank shall not, after its passage, exceed a fixed sum, the court may, on the suggestion of counsel, amend a tableau of distribution in which the commissioners have allowed themselves a larger sum, by reducing the allowance, though no opposition was made to the allowance by any creditor of the bank.

Where a statute expressly provides that it shall have effect from its passage, it will have effect from that date, and not from the time of its promulgation only.

The second section of the stat. of 6 April, 1843, reducing the compensation, allowed by sec. 25 of the stat. of 14 March, 1842, to the commissioners appointed under that act, did not impair any contract. The 25th section of the act of 1842, allowing such compensation, created no contract with the commissioners.

APPEAL from the District Court of the First District, *Buchanan,* J. The commissioners appointed under the act of the 14th March, 1842, to liquidate the Merchants' Bank of New Orleans, having filed, in the District Court for the First Judicial District, their final tableau of distribution, and prayed for its homologation, the usual order of publication was granted.

The publication having taken place as required by law, various creditors filed oppositions, insisting on their right to be placed on the tableau, and to be paid in preference to other creditors, &c. These oppositions were tried, and the court settled the rank of the opposing creditors, and from the decision thereon none of them have appealed. In the course of the argument on the oppositions, *Mr. Barker,* one of the counsel in the case, suggested to the court that, the commissioners were only entitled to a compensation of $1,000 per annum,

agreeably to the act of 1843, instead of $3,000 per annum, that fixed by the tableau. The judge reduced the compensation of the commissioners accordingly, from which decision *Calhoun* and *Conrey*, two of them, have appealed.

*Schmidt*, for the appellants. The judgment below was erroneous:

I. Because there was no opposition filed by any one to the compensation allowed them by the tableau. By the 24th section of the act of 1842, (Sessions acts, p. 246), "the powers, duties and liabilities of the commissioners, are the same as those conferred or imposed on syndics of insolvent estates, and the proceedings are the same as those provided for by the acts now in force, relative to the voluntary surrender of property." By the 36th section of the act relative to the surrender of property, (B. & C's Dig. 494,) it is provided that, after a tableau has been filed and notice given, *the creditors* who have any objection to the distribution "*shall file their opposition in the clerk's office, together with the motives on which the same is founded,*" &c. Vide *Kirkland* v. *His Creditors*, 7 Mart. N. S. 131.

The judge is not authorized to reform the tableau of distribution, unless there be: 1st. A written opposition filed, explaining the motives why the reform is required; and 2nd. Unless such opposition come from a creditor, that is, from a party who is not a mere volunteer, but who has a direct interest in the question. Here, no opposition has been filed with the clerk, and there is no evidence to show that *Jacob Barker* is a creditor. The judge had no power, *ex officio*, to make such changes in the tableau as he thought proper.

There are cases in which the court will officially apply the law, but they will be found to class themselves under two heads, viz: 1st. Those relating to the powers of the tribunal before which a suit is brought, or, in other words, *questions of jurisdiction*. The reason of this is, that questions of this nature fall peculiarly within the province of the judge, who cannot, without a dereliction of duty, and disregard of his official oath, assume an authority with which the legislative power has not chosen to entrust him. 2nd. Those in which the legislature, from motives of policy, has thought proper to refuse relief to a party aggrieved. In such cases, the judge may, *ex officio*, refuse his aid, if the fact appear plainly from the pleadings.

II. Because the construction which the inferior court put on the act of 1843, gives that law a retrospective effect, and violates the contract, by virtue of which the commissioners acted, contrary to the true intent and meaning of the legislature; and because such a construction would discharge the sureties of the commissioners, and leave the creditors without any other guarantee than their personal responsibility, which can never be presumed to have been intended by the legislature.

*Any alteration of the original agreement, whether injurious or beneficial to the surety, will discharge him.* *Miller* v. *Stewart*, 9 Wheat. 680. *Wright* v. *Johnston*, 8 Wend. 512. *Moore* v. *Payne*, 12 Wend. 126. *Colemard* v. *Lamb*, 15 Ibid. 329. *Miller* v. *McCann*, 7 Payne, 451. *Doe* v. *Postmaster General*, 1 Peters, 325. *United States* v. *Stansbury*, Ibid, 475. *Hunter* v. *United States*, 5 Ibid, 173. *Douglass* v. *Reynolds*, 7 Ibid, 113. *United States* v. *Orr*, 8 Ibid, 399. *Sprigg* v. *Bank of Mount Pleasant*, 10 Ibid, 257. Same case, 14 Ibid. 201. *United States* v. *Boyd*, 15 Ibid, 187. Pothier, Traité des Oblig. 406. *Roman* v. *Peters*, 2 Robinson, 479.

III. Because the inferior court makes the law take effect from the day it was approved by the governor, instead of twenty four hours after its promulgation. The act of 1843 (Sessions acts, p. 65) was approved 6th April, 1843, and promulgated the 13th April following; it did, consequently, not go into operation until the 15th April, 1843. Acts *in fine*.

*C. C. Parkhill*, contrâ. The stat. of 1843 did not impair the obligation of any contract. The stat. of 1842 created no contract. 6 Cranch. 135, 145. 4 Wheat. 611, 616, 661. 4 Devereux, N. C. Rep. 14, 20. 3 Story on Const. 260. The stat. of 1843 expressly provides that it shall go into effect immediately after its passage.

The judgment of the court was pronounced by

EUSTIS, C. J, On the 14th day of February, 1845, the commissioners of the Merchants' Bank of New Orleans, in liquidation, *Peter Conrey, Jr., Robert Copland* and *John Calhoun*, filed their final tableau of distribution and account in the clerk's office of the District Court of the First Judicial District, and notice

MERCHANTS
BANK.

thereupon issued, in the manner and form required by law, to all creditors and others interested, to show cause, within ten days, why it should not be homologated. In this tableau, the commissioners allowed themselves a salary at the rate of $3,000 per annum, from the 7th April, 1843, to 7th February, 1845, amounting to $5,500 each, or $11,000 for the two appellants, *Conrey* and *Calhoun*.

After trial of the oppositions, the court rendered judgment on the 23d February, 1846, amending the tableau in several particulars, and homologating it as amended.

The judge says: "My attention has been called by *Mr. Barker*, one of the counsel in the cause, to the charge for salary made by the commissioners. That charge is at the rate of three thousand dollars per annum, for each commissioner. I consider myself bound to examine into its legality, when that is brought to my notice, even in this informal manner; and am referred to the 2d section of an act of the legislature, approved 6th April, 1843, (page 63 of Sess. acts) which declares, that the commissioners of the banks in liquidation shall, in future, be entitled only to a yearly salary of one thousand dollars each, free from the expenses of office. This law is perfectly unambiguous, and must regulate the allowance of the commissioners, from the day of its date. It is therefore adjudged and decreed that the tableau be amended, by reducing the salary of each commissioner of the Merchants' Bank of New Orleans to the rate of one thousand dollars per annum, from and after the 6th April, 1843, until the date of the filing of the tableau, and that the tableau, so amended, be homologated."

From this judgment, two of the commissioners, *Peter Conrey, Jr.* and *John Calhoun*, have appealed, and assign as errors:

First, that the court undertook to reform the tableau of the commissioners, as to their commission, without any opposition whatever, either special or general, and upon the suggestion of a person who does not appear to have any interest in the matter, or to represent any one interested therein.

Secondly, that, even if the court was right in this respect, the judgment is erroneous in decreeing a reduction of the salary from the 6th April, instead of of the 15th April, being 24 hours after the promulgation of the law, which was not published until the 13th April, 1843, in the official gazette of the city of New Orleans.

*Charles C. Parkhill* and others, stockholders, make answer to the petition of appeal, praying for a confirmation of the judgment, and damages for a frivolous appeal, taken for the purpose of delay.

We think the judge did not err. The law reducing the salaries of the bank commissioners is imperative, and the court was bound to carry it into effect. It took effect from its passage, by virtue of an express proviso.

But, it is said, that the 25th section of the act of 1842, providing for the compensation of the commissioners appointed under the act, was a contract, and to change the amount by legislation, is to impair the obligation of a contract, in its constitutional sense.

A contract fixing the compensation of commissioners for a term of years, without the salutary control of the legislature, would convert the commission into a job, and defeat the very object of the law. Such a construction is totally repugnant to its intendment, and is supported by no sound rule for the interpreting of statutes.                    *Judgment affirmed.*